**The inhabitants of SIDNEY *vs*. The inhabitants of WINTHROP.**

An illegitimate child does not gain a new derivative settlement under the mother; but retains that which the mother had at the time of the birth.

The illegitimate *non compos* child of a *non compos* mother is considered as emancipated, for all the purposes of the act concerning the settlement and support of the poor.

IN this action, which was *assumpsit*, and came before the court upon a case stated by the parties, the question was upon the settlement of one *Maritta Tribou*, an illegitimate daughter of one *Polly Snell*.

*Polly Snell*, the mother, was the daughter of *Elijah Snell*, who dwelt and had his settlement in *Bridgewater*, in Massachusetts. She was born in 1780, and was *non compos mentis*, as was also her daughter, the pauper. In 1802 her father removed to *Winthrop*, leaving *Polly* in the care of a married sister of hers in *Bridgewater*, to whom he paid about fifty dollars a year for her support and that of her first illegitimate child. In 1806, being pregnant with *Maritta*, the pauper, she came to her father's house in *Winthrop*, where she remained four or five months. He then entered into a written contract with his son *Calvin Snell*, of *Sidney*, to support *Polly* and her last mentioned child during their respective lives, for which he gave *Calvin* a farm in *Sidney*, worth seven hundred dollars. Under this contract they were supported by him in *Sidney*, till April 20, 1824, when the pauper became chargeable to that town. The grandfather of the pauper gained a settlement in *Winthrop*, in three years after his removal thither, and died in that town about the year 1810.

*Boutelle*, for the plaintiffs, argued that the mother, being *non compos* from her birth, was never emancipated; and therefore continued to follow the settlement of her father, which was in *Winthrop*, although she was more than twenty-one years old at the time of his removal to that town. *Upton v. Northbridge* 15. *Mass.* 237. *Wis-*

*casset v. Waldoborough* 3. *Greenl.* 388. And by *Stat.* 1793, *ch.* 34, the pauper, being illegitimate, has the settlement of her mother, until she acquires a new one by some act of her own. *Boylston v. Princeton* 13. *Mass.* 381.

The *Stat.* 1821, *ch.* 122, could not affect the case, because the mother was only at board in *Sidney;* and the pauper was then a minor, subject to the legal control of her mother, who was bound to support her, if of sufficient ability ; and had the legal custody of her person, at least till a guardian was appointed.

*A. Belcher,* for the defendant, argued that the home, both of the mother and child, was in *Sidney* at the time of the passage of *Stat.* 1821, *ch.* 122 ; and that therefore they acquired settlements there, under its particular provisions. The father of *Polly Snell* had provided them a dwelling and support there, during their lives.; and had thus emancipated his daughter, and given to her and the pauper a *jus domicilii* with his son. *St. George v. Deer Isle* 3. *Greenl.* 390. *Boothbay v. Wiscasset ib.* 354.

MELLEN C. J. delivered the opinion of the Court.

*Maritta Snell,* the pauper, was born in 1807. She is an illegitimate, *non compos* daughter of *Polly Snell,* who is also *non compos.* Admitting that at the time of the pauper's birth, the legal settlement of the mother was in *Winthrop,* and that in consequence, the derivative settlement of the pauper was also in that town, still it is contended that both mother and daughter gained a new settlement in the town of *Sidney* in virtue of the act of 1821, *ch.* 122 ; as they both, at that time, and for several years before, had a permanent home in that town in the family of *Calvin Snell.* Upon the facts of the case, there is no question that at the time of the passing of the act they both resided, dwelt and had their home in *Sidney,* within the true meaning of the law. The only question is, what effect the act had upon them, if any, in relation to their settlement, or the settlement of either of them.

As the Court observed in the case of *Lubec v. Eastport* 3. *Greenl.* 220, the act operated to fix the settlement of thousands without any

violation on their part ; and it seems clear that the want of understanding and power of volition furnishes no valid objection against the capacity of the mother to gain a settlement, or rather to be settled in *Sidney ;* nor do we see why the same consequences do not follow in respect to the pauper, in the peculiar circumstances of this case, according to the principles on which the decision in *Lubec v. Eastport* is founded. She was then about fourteen years of age. However it is contended that as there is no proof of emancipation, her settlement could not have been affected by the act above mentioned. But her mother had no family ; and both were maintained at the expense of *Snell.* The mother had not understanding and capacity sufficient to enable her to emancipate her daughter ; neither was the daughter under the superintendence, protection or control of the mother. As to all these purposes, she was in the situation of a destitute and helpless orphan ; and as completely so, as the pauper was in the case of *Lubec v. Eastport.* On these grounds it seems clear that no principle opposes the operation of the statute to fix her settlement in *Sidney ;* and by giving it this construction, her settlement and that of her mother are both established in the same town ; of course they cannot be legally separated. This is a circumstance always regarded, and is generally decisive in questions relative to the derivative settlement of minor children ; but the minor in the present instance being illegitimate, cannot gain a new derivative settlement under the mother, but must retain her settlement in the town where the mother's settlement was fixed at the time of the child's birth. Both these unfortunate beings are therefore settled in *Sidney ;* and a nonsuit must be entered. *Plaintiffs nonsuit.*